**Declaration of Gregory Bousquet**

# Exhibit E



**POLARTEC®**

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## ORDER ACKNOWLEDGMENT

| | |
|---|---|
| **S O L D T O** Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | **S H I P T O** Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn: Lauren Park                         Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | Free on Board | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| 66000 | **LAMN NYL WOV/NYL TRICOT**<br><br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | 3000.000<br>3280.860 | M<br>YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

# TERMS AND CONDITIONS OF SALE

1.  CONTRACT ACKNOWLEDGMENT: These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgment is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon.  Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2.  ENTIRE AGREEMENT: These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties.  There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing.  Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3.  ARBITRATION:  Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules.  If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association.  All proceedings and all documents related to the proceedings shall be in the English language.  The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs. Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award. Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York registered or certified mail or by personal service, provided a reasonable time for appearance is allowed.  The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof.  The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions.  No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec.  Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable.  The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec now and hereafter.  Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the claimed breach occurs.  The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4.  ANTICIPATION:  No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5.  CREDITS AND PAYMENTS:  (a) This contract is based upon a limit of credit  approved by Polartec in its sole judgment.  Polartec reserves the right to limit or cancel Buyer's credit line.  If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand to Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments.  Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred.  Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph.  (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds.  Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off.  If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense.  Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs.  (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents.  (d) Upon breach by Buyer as to any installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer.  (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec.  (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6.  DELIVERY:  (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein.  Any such delivery shall then be deemed to conform to the Order Acknowledgment.  Buyer shall be obligated to purchase and pay for the quantities of goods so delivered.  (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered to it under the terms of this contract.  If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery date(s) under this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and other outstanding orders, or cancel this contract.  (c) Unless otherwise instructed, goods are sold ExWorks-Devens, MA, USA.  There shall be added to the purchase price a charge for delivery of less than full pieces.  The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer subject to Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment.  (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered.  Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7.  DELAY IN DELIVERY: (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender.  Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim  (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality.  (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract.  (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay.  If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract.  (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec, with government laws, rules or regulations.  (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered.  (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery.  (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection.  (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec is not retained with regard to sales to Buyer, at the rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days.  (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms.  All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8.  CLAIMS AND ALLOWANCES:  (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness.  Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent.  If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods.  Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer.  Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec.  (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice.  Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of shipment.  Where the defect for non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects.  All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions. Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods.  Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way vary or extend the time for making claims, whether based upon obvious or non-obvious defects.  Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed.  Buyer is not allowed to suspend any of its obligations towards Polartec.

9.  WARRANTIES:  (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY CLAIMS.  Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use.  (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract.  (c) Each matches of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard. Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations.  Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods sold in packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation.  (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting.  (e) Any goods made or consisting wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control.

10.  ASSORTMENTS:  Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor.  Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment.  If Buyer fails to furnish assortment within time specified, Polartec, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price.  If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or  (c) treat the contract as breached and claim damages for breach thereof.  If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11.  RISK:  Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account.  Goods held over thirty (30) days are subject to storage and other charges.

12.  PATTERN AND CONFINEMENT:  (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs.  (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment.  Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined.  Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term.  Reorders do not extend terms of confinement.

13.  NOTICES and TRADE NAMES:  Buyer shall be obligated to use notices or labeling as may be required by Polartec.  Buyer shall make those changes third parties, purchasing from Buyer for use or further distribution, to use such notices or labeling as Polartec may require.  Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec' trade-names or trademarks unless specifically authorized by Polartec in writing.

14.  INCREASE IN COSTS:  Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control.  The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error.  Polartec may modify deliveries to the extent necessitated by any governmental action.

15.  SECURITY INTEREST:  Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer.  Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title.  Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods.  Buyer hereby appoints Polartec any officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature.  Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer's inventory.  Buyer shall insure goods, for which payment in full has not been made, against any and all risks commonly insured against such as theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16.  REMEDIES:  Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law.  Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated.  In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec.  All costs and expenses incurred by Polartec in repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title.  If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser of such goods at any such sale); or (f) Polartec may take possession of any goods which Buyer has failed or refused to receive, with the right to hold or sell same as above provided.

17.  POLARTEC'S LIABILITY:  The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered.  The limit of liability for Polartec for late delivery or non-delivery or any breach including breach of agreement to confine, if any, shall be the difference, if any between the contract price and the fair market value of goods delivered or to be delivered on the contract date of delivery.  Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price.  IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18.  SEVERABILITY:  If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19.  HEADINGS:  The headings in this contract are for purpose of reference only and shall not   otherwise affect the meaning hereof.

20.  ASSIGNMENT:  No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21.  VALIDITY:  The validity of this contract shall be determined under the internal laws of the State of New York.

22.  CISG:  The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

---

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |



46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

Date Created: 2/20/15
Time Created: 20:38:08

# ORDER ACKNOWLEDGMENT

SOLD TO
Junny Interwork Corp.
#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

SHIP TO
Dong Tam Garment Company Ltd.
No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Attn: Lauren Park

Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | |
|---|---|---|
| DIVAS2016BULK | Free on Board | |

| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
|---|---|---|---|
| | Kim Fabrizio | Subject to credit approval | |

| SHIP VIA | ORDERING CUSTOMER | CUSTOMER NUMBER |
|---|---|---|
| | Junny Int/Extreme Sports Divas | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| **66000** | **LAMN NYL WOV/NYL TRICOT**<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | 3000.000<br>3280.860 | M<br>YD | USD | 19.5000 |

***Any changes made to a previous Order Confirmation are indicated by bold underlined italics***



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

*Amended*

**ORDER ACKNOWLEDGMENT**

Date Created: 2/20/15
Time Created: 20:38:08
Page #: 2 **of** 3

<table>
<tr><td>S O L D T O</td><td>Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF</td><td>S H I P T O</td><td>Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM</td></tr>
</table>

Attn: Lauren Park                              Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | PREPAID | | |
| **SALESPERSON** | **CUSTOMER SERVICE REP.** | **CREDIT TERMS** | |
| | Kim Fabrizio | Subject to credit approval | |
| **SHIP VIA** | **ORDERING CUSTOMER** | | **CUSTOMER NUMBER** |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| *PHTNEORLGU-15* | *LG NEOSHELL REFLCTVE HE*<br>23.5MM WIDE X 120MM LONG<br>Polartec Order #s: 534682<br>Harmonization: 5807.  .    cloth labels<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | *2600.000* | EA | USD | 0.0000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

Polartec_000037

## TERMS AND CONDITIONS OF SALE

1. CONTRACT ACKNOWLEDGEMENT: These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and by Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgment is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon.  Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2. ENTIRE AGREEMENT: These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties.  There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing.  Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3. ARBITRATION:  Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules.  If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association.  All proceedings and all documents related to the proceedings shall be in the English language.  The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs.  Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award. Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed.  The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof.  The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions.  No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec.  Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable.  The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec now and hereafter.  Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the claimed breach occurs.  The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4. ANTICIPATION:  No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5. CREDITS AND PAYMENTS:  (a) This contract is based upon a limit of credit  approved by Polartec in its sole judgment.  Polartec reserves the right to limit or cancel Buyer's credit line.  If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand by Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments.  Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred.  Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph.  (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds.  Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off.  If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense.  Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs.  (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents.  (d) Upon breach by Buyer as to any installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer.  (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec.  (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount .

6. DELIVERY:  (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein.  Any such delivery shall then be deemed to conform to the Order Acknowledgment.  Buyer shall be obligated to purchase and pay for the quantities of goods so delivered.  (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered to Buyer under the terms of this contract.  If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery dates specified in this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and other outstanding orders, or cancel this contract.  (c) Unless otherwise stated, goods are sold ExWorks-Devens, MA, USA.  There shall be added to the purchase price a charge for delivery of less than full pieces.  The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer subject to Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment.  (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered.  Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7. DELAY IN DELIVERY: (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender.  Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim  (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality.  (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract.  (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay.  If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract.  (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations.  (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered.  (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery.  (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection.  (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec has no factor merchant with regard to sales to Buyer, at the rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days.  (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms.  All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8. CLAIMS AND ALLOWANCES:  (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness.  Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent.  If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods.  Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer.  Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec.  (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice.  Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of invoice.  Notwithstanding the foregoing, all claims of whatever kind or nature for non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects.  All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions. Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods.  Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way or extend the time for making claims, whether based upon obvious or non-obvious defects.  Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed.  Buyer is allowed to suspend any of its obligations towards Polartec.

9. WARRANTIES:  (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY CLAIMS.  Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use.  (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract.  (c) Each makers of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard. Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations.  Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods sold in packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation.  (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting.  (e) Any goods presented to consisting wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control

10. ASSORTMENTS:  Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor.  Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment.  If Buyer fails to furnish assortment within time specified, Polartec, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price.  If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or  (c) treat the contract as breached and claim damages for breach thereof.  If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11. RISK:  Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account.  Goods held over thirty (30) days are subject to storage and other charges.

12. PATTERN AND CONFINEMENT:  (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs.  (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment.  Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined.  Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term.  Reorders do not extend terms of confinement.

13. NOTICES AND TRADE NAMES:  Buyer shall be obligated to use notices or labeling as may be required by Polartec.  Polartec shall neither make contracts, purchasing from Buyer for use in further distribution, to use notices or labeling on Polartec may require.  Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec' trade-names or trademarks unless specifically authorized by Polartec in writing.

14. INCREASE IN COSTS:  Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control. The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error.  Polartec may modify deliveries to the extent necessitated by any governmental action.

15. SECURITY INTEREST:  Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer.  Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title.  Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods.  Buyer hereby appoints Polartec any officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature.  Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer covering Buyer's inventory.  Buyer shall store goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16. REMEDIES:  Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable  law.  Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated.  In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec.  All costs and expenses incurred by Polartec in repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title. If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser at such goods at any such sale); or (f) Polartec may take possession of any goods which Buyer has failed or refused to receive, with the right to hold or sell same as above provided.

17. POLARTEC'S LIABILITY:  The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered.  The limit of liability for late delivery or non-delivery or any other breach including breach of agreement to confine, if any, shall be the difference, if any between the market value of goods delivered or to be delivered on the contract date of delivery.  Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price.  IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY OTHER DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18. SEVERABILITY:  If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19. HEADINGS:  The headings in this contract are for reference purposes only and do not in any way define, limit or   otherwise affect the meaning hereof.

20. ASSIGNMENT:  No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21. VALIDITY:  The validity of this contract shall be determined under the internal laws of the State of New York.

22. CISG:  The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
|---|---|---|---|
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## ORDER ACKNOWLEDGMENT

SOLD TO
Junny Interwork Corp.

#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

SHIP TO
Dong Tam Garment Company Ltd.

No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Attn: Lauren Park                    Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | | | |
|---|---|---|---|---|---|
| DIVAS2016BULK | Free on Board | | | | |
| SALESPERSON | CUSTOMER SERVICE REP. | | CREDIT TERMS | | |
| | Kim Fabrizio | | Subject to credit approval | | |
| SHIP VIA | | ORDERING CUSTOMER | | | CUSTOMER NUMBER |
| | | Junny Int/Extreme Sports Divas | | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT**<br>BLUE #3/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | **900.000** M<br>984.258 YD | USD | 19.5000 |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT**<br>PINK #2/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | **900.000** M<br>984.258 YD | USD | 19.5000 |
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT**<br>ASPHALT GREY/LIGHT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | TBD | **900.000** M<br>984.258 YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

**ORDER ACKNOWLEDGMENT**

| SOLD TO | SHIP TO |
|---|---|
| Junny Interwork Corp. | Dong Tam Garment Company Ltd. |
| #814 Indeokwon Sung jee 954-6 | No 26A, Chuong Duong St. Tran |
| Gwanyang Dongan-su 431-060 | Phu Urban Hai Duong City |
| Gyeonggi-do | Hai Huong Province |
| KOREA, REPUBLIC OF | VIETNAM |

Attn:  Lauren Park                    Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | PREPAID | | |
| **SALESPERSON** | **CUSTOMER SERVICE REP.** | **CREDIT TERMS** | |
| | Kim Fabrizio | Subject to credit approval | |
| **SHIP VIA** | **ORDERING CUSTOMER** | | **CUSTOMER NUMBER** |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| *PDWRTEC-15* | *PTEC DWR EU/US* | TBD | *2600.000* | EA | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. .    cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| PHTNEORLGU-15 | **LG NEOSHELL REFLCTVE HEAT TR** | TBD | 2600.000 | EA | USD | 0.0000 |
| | 23.5MM WIDE X 120MM LONG | | | | | |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 5807. .    cloth labels | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| *PLS-15* | *PTEC PRNTD SIDE SEAM LA* | TBD | *2600.000* | EA | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | LABEL | | | | | |
| | Harmonization: 5807. .    cloth labels | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| *PNEO-15* | *NEOSHELL HANGTAG US/EU* | TBD | *2600.000* | EA | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. .    cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| *PWPTEC-15* | *WATERPROOF HANGTAG* | TBD | *2600.000* | EA | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. .    cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

# TERMS AND CONDITIONS OF SALE

1. **CONTRACT ACKNOWLEDGEMENT:** These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and by Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgement is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon. Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2. **ENTIRE AGREEMENT:** These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties. There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing. Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3. **ARBITRATION:** Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and the supplementary procedures under the expedited procedures of such rules. If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association. All proceedings and all documents related to the proceedings shall be in the English language. The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs. Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award. Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed. The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof. The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions. No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec. Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable. The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec now and hereafter. Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the breach occurs. The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4. **ANTICIPATION:** No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5. **CREDITS AND PAYMENTS:** (a) This contract is based upon a limit of credit approved by Polartec in its sole judgment. Polartec reserves the right to limit or cancel Buyer's credit line. If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand by Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments. Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred. Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph. (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds. Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off. If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense. Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs. (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents. (d) Upon breach by Buyer as to any Installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer. (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec. (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6. **DELIVERY:** (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein. Any such delivery shall be deemed to conform to the Order Acknowledgment. Buyer shall be obligated to purchase and pay for the quantities of goods so delivered. (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered by it under the terms of this contract. If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery date(s) under this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and/or other outstanding orders, or cancel this contract. (c) Unless otherwise specified, goods are sold ExWorks-Devens, MA, USA. There shall be added to the purchase price a charge for delivery of less than full pieces. The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer subject to Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment. (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered. Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7. **DELAY IN DELIVERY:** (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender. Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim. (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality. (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract. (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay. If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract. (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations. (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered. (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery. (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection. (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec has not elected to deal with a factor, the rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days. (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms. All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8. **CLAIMS AND ALLOWANCES:** (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness. Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent. If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods. Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer. Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec. (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice. Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of invoice. Notwithstanding the foregoing, all claims otherwise for obvious or non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects. All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions. Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods. Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way or extend the time for making claims, whether based upon obvious or non-obvious defects. Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed. Buyer is allowed to suspend any of its obligations towards Polartec.

9. **WARRANTIES:** (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY'S CLAIMS. Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use. (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract. (c) Each manufacturer of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard. Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations. Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods sold in packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation. (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting. (e) Any goods delivered which prove wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control.

10. **ASSORTMENTS:** Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor. Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment. If Buyer fails to furnish assortment within time specified, Polartec may, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price. If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or (c) treat the contract as breached and claim damages for breach thereof. If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11. **RISK:** Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account. Goods held over thirty (30) days are subject to storage and other charges.

12. **PATTERN AND CONFINEMENT:** (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs. (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular color category, unless specifically shown on the Order Acknowledgment. Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined. Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term. Reorders do not extend terms of confinement.

13. **NOTICES AND TRADE NAMES:** Buyer shall be obligated to use notices or labeling as may be required by Polartec. Buyer shall release those third parties, purchasing from Buyer for use or further distribution, to use such notices or labeling as Polartec may require. Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec' trade-names or trademarks unless specifically authorized by Polartec in writing.

14. **INCREASE IN COSTS:** Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control. The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error. Polartec may modify deliveries to the extent necessitated by any governmental action.

15. **SECURITY INTEREST:** Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer. Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title. Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods. Buyer hereby appoints Polartec any officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature. Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer's inventory. Buyer shall insure such goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16. **REMEDIES:** Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law. Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated. In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec. All costs and expenses incurred by Polartec in repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title. If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess if there be any; (f) Polartec may take possession of any goods which Buyer has failed or refused to receive, with the right to hold or sell same as above provided.

17. **POLARTEC'S LIABILITY:** The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered. The limit of liability of Polartec for late delivery or non-delivery or any breach including breach of agreement to confine, if any, shall be the difference, if any between the market value of goods delivered or to be delivered on the contract date of delivery. Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price. IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY OTHER DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18. **SEVERABILITY:** If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19. **HEADINGS:** The headings in this contract are for convenience only and shall not limit or otherwise affect the meaning hereof.

20. **ASSIGNMENT:** No rights of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21. **VALIDITY:** The validity of this contract shall be determined under the internal laws of the State of New York.

22. **CISG:** The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
|---|---|---|---|
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

### ORDER ACKNOWLEDGMENT

| SOLD TO | SHIP TO |
|---|---|
| Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn: Lauren Park          Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | Free on Board | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT**<br>BLUE #3/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *5/23/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT**<br>PINK #2/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *5/23/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT**<br>ASPHALT GREY/LIGHT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *5/23/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

**ORDER ACKNOWLEDGMENT**

| | |
|---|---|
| **S O L D T O** Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | **S H I P T O** Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn:  Lauren Park                              Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | PREPAID | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| **PDWRTEC-15** | **PTEC DWR EU/US** | TBD | 2600.000 | EA | USD | 0.0000 |
| | Polartec Order #s: 534682<br>Harmonization: 4821. .    cardboard tags<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| **PHTNEORLGU-15** | **LG NEOSHELL REFLCTVE HEAT TR** | TBD | 2600.000 | EA | USD | 0.0000 |
| | 23.5MM WIDE X 120MM LONG<br>Polartec Order #s: 534682<br>Harmonization: 5807. .     cloth labels<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| **PLS-15** | **PTEC PRNTD SIDE SEAM LABEL** | TBD | 2600.000 | EA | USD | 0.0000 |
| | Polartec Order #s: 534682<br>LABEL<br>Harmonization: 5807. .     cloth labels<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| **PNEO-15** | **NEOSHELL HANGTAG US/EU** | TBD | 2600.000 | EA | USD | 0.0000 |
| | Polartec Order #s: 534682<br>Harmonization: 4821. .    cardboard tags<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| **PWPTEC-15** | **WATERPROOF HANGTAG** | TBD | 2600.000 | EA | USD | 0.0000 |
| | Polartec Order #s: 534682<br>Harmonization: 4821. .    cardboard tags<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

## TERMS AND CONDITIONS OF SALE

1. CONTRACT ACKNOWLEDGEMENT: These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgment is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon.  Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2. ENTIRE AGREEMENT: These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties.  There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing.  Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3. ARBITRATION: Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules.  If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association.  All proceedings and all documents related to the proceedings shall be in the English language.  The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs.  Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award.  Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed.  The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof.  The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award.  The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions.  No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec.  Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable.  The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec now and hereafter.  Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the claimed breach occurs.  The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4. ANTICIPATION: No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5. CREDITS AND PAYMENTS: (a) This contract is based upon a limit of credit  approved by Polartec in its sole judgment.  Polartec reserves the right to limit or cancel Buyer's credit line.  If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand by Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments. Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred.  Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph.  (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds.  Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off.  If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense.  Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs.  (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents.  (d) Upon breach by Buyer as to any installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer.  (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec.  (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6. DELIVERY: (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein.  Any such delivery shall be deemed to conform to the Order Acknowledgment.  Buyer shall be obligated to purchase and pay for the quantities of goods so delivered.  (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered by it under the terms of this contract.  If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery date(s) under this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and other outstanding orders, or cancel this contract.  (c) Unless otherwise specified, goods are sold ExWorks-Devens, MA, USA.  There shall be added to the purchase price a charge for delivery of less than full pieces.  The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer subject to Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment.  (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered.  Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7. DELAY IN DELIVERY: (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender.  Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim  (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality.  (c) Delay in delivery or sample pieces or other sample requirements shall not constitute a breach of this contract.  (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay.  If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract.  (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations.  (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered.  (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery.  (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when due for all or any of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection.  (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec has not elected to sell such goods to Buyer at the rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days.  (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms.  All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8. CLAIMS AND ALLOWANCES: (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness.  Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent.  If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods.  Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer.  Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec.  (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice.  Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of delivery.  Waiver of non-obvious defects or non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects.  All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions.  Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods.  Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way or extend the time for making claims, whether based upon obvious or non-obvious defects.  Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed.  Buyer is allowed to suspend any of its obligations towards Polartec.

9. WARRANTIES: (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY CLAIMS. Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use.  (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract.  (c) Exact matches of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard.  Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations.  Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods sold to packing unit of another who packing unit, Polartec assumes no responsibility for the accuracy of such segregation.  (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting.  (e) Any goods delivered to Buyer and accepted wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control.

10. ASSORTMENTS: Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor.  Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment.  If Buyer fails to furnish assortment within time specified, Polartec, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price.  If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or  (c) treat the contract as breached and obtain damages for breach thereof.  If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11. RISK: Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account.  Goods held over thirty (30) days are subject to storage and other charges.

12. PATTERN AND CONFINEMENT: (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs.  (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment.  Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined.  Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term.  Reorders do not extend terms of confinement.

13. NOTICES and TRADE NAMES: Buyer shall be obligated to use notices or labeling as may be required by Polartec.  Buyer shall make those third parties, purchasing from Buyer for use or further distribution, to use such notices or labeling as Polartec may require.  Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes with this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec' trade-names or trademarks unless specifically authorized by Polartec in writing.

14. INCREASE IN COSTS: Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control.  The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error. Polartec may modify deliveries to the extent necessitated by any governmental action.

15. SECURITY INTEREST: Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer.  Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title.  Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods.  Buyer hereby appoints Polartec as any officer or agent at Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature.  Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer's inventory.  Buyer shall insure goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16. REMEDIES: Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law.  Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated.  In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec.  All costs and expenses incurred by Polartec in repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title.  If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice to Buyer and before forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec; (b) may defer shipment hereunder or under any contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser at such goods at any such sale); or (f) Polartec may take possession of any goods which Buyer has failed or refused to receive, with the right to hold or sell same as above provided.

17. POLARTEC'S LIABILITY: The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered.  The limit of liability for Polartec for late delivery or non-delivery or any other breach including breach of agreement to confine, if any, shall be the difference, if any between the contract price or the fair market value of goods delivered or to be delivered on the contract date of delivery.  Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price.  IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18. SEVERABILITY: If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19. HEADINGS: The headings in this contract are for convenience only and are not a part of this contract nor  otherwise affect the meaning hereof.

20. ASSIGNMENT: No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21. VALIDITY: The validity of this contract shall be determined under the internal laws of the State of New York.

22. CISG: The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
|---|---|---|---|
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |



**POLARTEC®**

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## ORDER ACKNOWLEDGMENT

| SOLD TO | SHIP TO |
|---|---|
| Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn: Lauren Park        Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | Free on Board | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY   UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT**<br>BLUE #3/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 5/23/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT**<br>PINK #2/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 5/23/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT**<br>ASPHALT GREY/LIGHT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 5/23/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## ORDER ACKNOWLEDGMENT

SOLD TO:
Junny Interwork Corp.

#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

SHIP TO:
Dong Tam Garment Company Ltd.

No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Attn: Lauren Park

Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | PREPAID | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| PDWRTEC-15 | PTEC DWR EU/US | TBD | 2600.000 EA | | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. . cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| PHTNEORLGU-15 | LG NEOSHELL REFLCTVE HEAT TR | TBD | 2600.000 EA | | USD | 0.0000 |
| | 23.5MM WIDE X 120MM LONG | | | | | |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 5807. . cloth labels | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| PLS-15 | PTEC PRNTD SIDE SEAM LABEL | TBD | 2600.000 EA | | USD | 0.0000 |
| | LABEL | | | | | |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 5807. . cloth labels | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| PNEO-15 | NEOSHELL HANGTAG US/EU | TBD | 2600.000 EA | | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. . cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |
| PWPTEC-15 | WATERPROOF HANGTAG | TBD | 2600.000 EA | | USD | 0.0000 |
| | Polartec Order #s: 534682 | | | | | |
| | Harmonization: 4821. . cardboard tags | | | | | |
| | GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | | | | | |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

TERMS AND CONDITIONS OF SALE

1. CONTRACT ACKNOWLEDGEMENT: These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgment is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon. Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2. ENTIRE AGREEMENT: These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties. There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing. Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3. ARBITRATION: Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules. If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association. All proceedings and all documents related to the proceedings shall be in the English language. The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs. Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award. Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed. The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof. The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions. No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec. Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable. The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec hereunder, now and hereafter. Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the breach occurs. The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4. ANTICIPATION: No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5. CREDITS AND PAYMENTS: (a) This contract is based upon a limit of credit approved by Polartec in its sole judgment. Polartec reserves the right to limit or cancel Buyer's credit line. If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand by Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments. Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred. Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph. (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds. Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off. If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense. Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs. (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents. (d) Upon breach by Buyer as to any Installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer. (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec. (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6. DELIVERY: (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein. Any such delivery shall then be deemed to conform to the Order Acknowledgment. Buyer shall be obligated to purchase and pay for the quantities of goods so delivered. (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered in, or under the terms of this contract. If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery date(s) under this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and other outstanding orders, or cancel this contract. (c) Unless otherwise provided herein, goods are sold ExWorks-Devens, MA, USA. There shall be added to the purchase price a charge for delivery of less than full pieces. The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer against Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment. (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered. Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7. DELAY IN DELIVERY: (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender. Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality. (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract. (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay. If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract. (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations. (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered. (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery. (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection. (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec is not required with regard to sales to Buyer, at the rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days. (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms. All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8. CLAIMS AND ALLOWANCES: (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness. Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent. If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods. Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer. Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec. (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice. Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of invoice. Notwithstanding the foregoing, (i) objections for non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects. All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions. Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods. Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way vary or extend the time for making claims, whether based upon obvious or non-obvious defects. Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders thereby placed. Buyer is allowed to suspend any of its obligations towards Polartec.

9. WARRANTIES: (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY CLAIMS. Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use. (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract. (c) Exact matches of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard. Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations. Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods sold to packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation. (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting. (e) Any goods which Polartec cannot successfully wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control

10. ASSORTMENTS: Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor. Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment. If Buyer fails to furnish assortment within time specified, Polartec may, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec) and immediately invoice such greige goods at the finished goods price. If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or (c) treat the contract as breached and claim damages for breach thereof. If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11. RISK: Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account. Goods held over thirty (30) days are subject to storage and other charges.

12. PATTERN AND CONFINEMENT: (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs. (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment. Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined. Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term. Reorders do not extend terms of confinement.

13. NOTICES AND TRADE NAMES: Buyer shall be obligated to use notices or labeling as may be required by Polartec. Buyer shall release purchasing from Buyer for use in further distribution, to use notices or labeling as Polartec may require. Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec's trade-names or trademarks unless specifically authorized by Polartec in writing.

14. INCREASE IN COSTS: Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control. The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error. Polartec may modify deliveries to the extent necessitated by any governmental action.

15. SECURITY INTEREST: Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer. Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title. Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec's reservation of title in goods. Buyer hereby appoints Polartec or any officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature. Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer's inventory. Buyer shall insure goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16. REMEDIES: Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law. Such remedies shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated. In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec. In addition, Buyer, in repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title. If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser of such goods at any such sale); or (f) Polartec may take possession of any goods which Buyer has failed or refused to receive, with the right to hold or sell same as above provided.

17. POLARTEC'S LIABILITY: The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered. The limit of liability for late delivery or non-delivery or any breach including breach of agreement to confine, if any, shall be the difference, if any between the contract price and the fair market value of goods delivered or to be delivered on the contract date of delivery. Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price. IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY OTHER DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18. SEVERABILITY: If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19. HEADINGS: The headings in this contract are for convenience only and are not to be used in construction of any part of this contract or otherwise affect the meaning hereof.

20. ASSIGNMENT: No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21. VALIDITY: The validity of this contract shall be determined under the internal laws of the State of New York.

22. CISG: The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
|---|---|---|---|
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |

Polartec_000047



**POLARTEC**®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

**ORDER ACKNOWLEDGMENT**

*Amended*

Date Created:   5/19/15

Time Created:   20:38:02

Page #:   1  of  2

| S O L D T O | Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | S H I P T O | Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn:  Lauren Park                                         Attn:  Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | Free on Board | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY | UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|---|
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT**<br>BLUE #3/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *6/13/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT**<br>PINK #2/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *6/13/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT**<br>ASPHALT GREY/LIGHT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | *6/13/15* | *900.000*<br>984.258 | M<br>YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

Polartec_000048

## TERMS AND CONDITIONS OF SALE

1. **CONTRACT ACKNOWLEDGEMENT:** These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and by Polartec, LLC "Polartec", to sell the goods described in this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgment is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon. Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2. **ENTIRE AGREEMENT:** These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties. There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing. Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3. **ARBITRATION:** Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules. If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association. All proceedings and all documents related to the proceedings shall be in the English language. The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs. Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award. Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed. The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof. The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions. No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec. Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable. The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec now and hereafter. Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the claimed breach occurs. The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4. **ANTICIPATION:** No allowance shall be made to Buyer for anticipation. Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5. **CREDITS AND PAYMENTS:** (a) This contract is based upon a limit of credit approved by Polartec in its sole judgment. Polartec reserves the right to limit or cancel Buyer's credit line. If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand to Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments. Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred. Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph. (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds. Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off. If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense. Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs. (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents. (d) Upon breach by Buyer as to any installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer. (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec. (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6. **DELIVERY:** (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein. Any such delivery shall be deemed to conform to the Order Acknowledgment. Buyer shall be obligated to purchase and pay for the quantities of goods so delivered. (b) Polartec has been and will be dependent upon the availability of suitable yarn, greige goods and other items to be used in the manufacture of the goods to be delivered by it under the terms of this contract. If deliveries thereof to Polartec are delayed, reduced, cancelled or in any way interfered with, or if Polartec is unable to obtain labor, materials, or services through Polartec's usual and regular sources, then Polartec, upon notice to Buyer, shall have the right to postpone the delivery date(s) under this contract for a time which is reasonable under all of the circumstances, make partial delivery, apportion deliveries to this and other outstanding orders, or cancel this contract. (c) Unless otherwise indicated, goods are sold ExWorks-Devens, MA, USA. There shall be added to the purchase price a charge for delivery of less than full pieces. The acceptance of shipment by a common carrier or licensed public truckman shall constitute a delivery, or in the absence of shipping instructions the mailing of an invoice shall constitute a delivery; thereupon, title or, as applicable, risk of loss, shall pass to Buyer against Polartec's right of stoppage in transit, except, however, that on goods for which payment is to be made in cash on or before delivery, title or, as applicable, risk of loss, shall pass to Buyer only upon receipt of full payment. (d) Goods held subject to Buyer's instructions, or where Buyer fails to furnish shipping instructions, may be invoiced by Polartec and Buyer shall pay for same at maturity of invoice so rendered. Goods invoiced and held by Polartec in any event shall be held at Buyer's risk and expense, Buyer to pay Polartec for storage and insurance at Polartec's prevailing rates.

7. **DELAY IN DELIVERY:** (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender. Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim. (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality. (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract. (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay. If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract. (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations. (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered. (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver in accordance with the provisions of the contract and such notice shall constitute valid tender of delivery. (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding that the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection. (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec has not elected such goods in the interim (ii) Rate of interest as set forth on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days. (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms. All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

8. **CLAIMS AND ALLOWANCES:** (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness. Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the condition as when delivered to Buyer or its agent. If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods. Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer. Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec. (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice. Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of delivery. Notwithstanding the foregoing, all claims whether for obvious or non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects. All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions. Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods. Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way void or extend the time for making claims, whether based upon obvious or non-obvious defects. Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed. Buyer is allowed to suspend any of its obligations towards Polartec.

9. **WARRANTIES:** (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY'S CLAIMS. Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use. (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract. (c) Each manufacturer of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard. Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations. Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods in a particular packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation. (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting. (e) Any goods delivered consisting wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control.

10. **ASSORTMENTS:** Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor. Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment. If Buyer fails to furnish assortment within time specified, Polartec may, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price. If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or (c) treat the contract as breached and obtain damages for breach thereof. If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11. **RISK:** Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account. Goods held over thirty (30) days are subject to storage and other charges.

12. **PATTERN AND CONFINEMENT:** (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs. (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment. Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined. Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term. Reorders do not extend terms of confinement.

13. **NOTICES AND TRADE NAMES:** Buyer shall be obligated to use notices or labeling as may be required by Polartec. Notices include those of third parties, purchasing from Buyer for use or further distribution, to use such notices or labeling as Polartec may require. Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods. No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec's trade-names or trademarks unless specifically authorized by Polartec in writing.

14. **INCREASE IN COSTS:** Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control. The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error. Polartec may modify deliveries to the extent necessitated by any governmental action.

15. **SECURITY INTEREST:** Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer. Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title. Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods. Buyer hereby appoints Polartec or any officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature. Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer covering Buyer's inventory. Buyer shall insure goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16. **REMEDIES:** Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law. Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated. In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec. In repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title. If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess. Polartec having the right to become the purchaser of such goods at any such sale); or (f) Polartec may take possession of any goods then failed or refused to receive, with the right to hold or sell same as above provided.

17. **POLARTEC'S LIABILITY:** The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered. The limit of liability for Polartec for late delivery or non-delivery or any other breach including breach of agreement to confine, if any, shall be the difference, if any between the contract price of the goods so delivered or to be delivered on the contract date of delivery. Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price. IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18. **SEVERABILITY:** If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19. **HEADINGS:** The headings in this contract are for convenience only and shall not limit or otherwise affect the meaning hereof.

20. **ASSIGNMENT:** No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21. **VALIDITY:** The validity of this contract shall be determined under the internal laws of the State of New York.

22. **CISG:** The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
|---|---|---|---|
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |



**POLARTEC®**

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

**ORDER ACKNOWLEDGMENT**

| S O L D  T O | Junny Interwork Corp.<br><br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do<br>KOREA, REPUBLIC OF | S H I P  T O | Dong Tam Garment Company Ltd.<br><br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province<br>VIETNAM |

Attn:  Lauren Park                          Attn: Luong Hoang Nam

| CUSTOMER P.O. NUMBER | SHIPMENT TERMS | | |
|---|---|---|---|
| DIVAS2016BULK | Free on Board | | |
| SALESPERSON | CUSTOMER SERVICE REP. | CREDIT TERMS | |
| | Kim Fabrizio | Subject to credit approval | |
| SHIP VIA | ORDERING CUSTOMER | | CUSTOMER NUMBER |
| *Shanghai Lucky Load int log Co* | Junny Int/Extreme Sports Divas | | 17255 |

| ITEM NUMBER | DESCRIPTION | SCHEDULE DATE | QUANTITY        UM | CUR | PRICE/UNIT |
|---|---|---|---|---|---|
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT**<br>BLUE #3/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 6/13/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT**<br>PINK #2/LT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 6/13/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT**<br>ASPHALT GREY/LIGHT GREY<br>Polartec Order #s: 534282<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>Harmonization: 5407.42.0000 WOVEN FACE<br>Country of Origin: CHINA<br>GOODS NOT ELIGIBLE FOR NAFTA CERTIFICATE OF ORIGIN | 6/13/15 | 900.000 M<br>984.258 YD | USD | 19.5000 |

*Any changes made to a previous Order Confirmation are indicated by bold underlined italics*

## TERMS AND CONDITIONS OF SALE

1.  CONTRACT ACKNOWLEDGEMENT: These TERMS AND CONDITIONS OF SALE are the terms and conditions of the contract by you, "Buyer", to buy and Polartec, LLC "Polartec", to sell the goods described on this Order Acknowledgment issued by Polartec upon receipt from Buyer of an order for the purchase of goods (and as used herein, Polartec includes its insurer of its factor where that construction is applicable.) This contract shall become binding and enforceable against Buyer when the Order Acknowledgement is signed by Polartec and is delivered to Buyer or in any event, when Buyer has accepted delivery of the whole or any part of the goods described hereon.  Unless explicitly stated otherwise, prices on the Order Acknowledgment are exclusive of any sales, use, excise or value added taxes and shall apply only to the quantities quoted.

2.  ENTIRE AGREEMENT: These Terms and Conditions of Sale supersede the terms of Buyer's purchase order, if any, and include the entire contract between the parties.  There are no oral understandings, options, warranties, representations or agreements relative hereto which are not fully expressed herein, and no modification hereof shall become effective unless agreed to by both parties in writing.  Waiver by Polartec of a breach by Buyer of any provision of this contract shall not be deemed a waiver of future compliance therewith, and such provisions as well as all other provisions hereunder shall remain in full force and effect.

3.  ARBITRATION:  Any controversy or claim arising out of or relating to this contract or any modification thereof including any claim for damages and/or rescission or any interpretation or breach thereof, shall be settled by arbitration, with hearing(s) before a panel of three (3) arbitrators in the City of New York, one (1) selected by Buyer, one (1) selected by Polartec, and one (1) neutral arbitrator to be selected by the two (2) arbitrators selected as set forth hereinabove in accordance with the commercial rules of the American Arbitration Association and supplementary procedures under the expedited procedures of such rules.  If the two (2) arbitrators cannot agree on the third arbitrator within a period of ten (10) business days, then the third arbitrator shall be selected in accordance with the commercial rules of the American Arbitration Association.  All proceedings and all documents related to the proceedings shall be in the English language.  The costs of the arbitration, including the fees and expenses of the arbitrator(s), shall be borne by the parties to the arbitration in equal shares, each party to this Agreement bearing the expenses of its own counsel, experts, witnesses and preparation and presentation of all proofs.  Polartec and Buyer consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York, whichever is first selected by the moving party, for all purposes in connection with arbitration including enforcement of the arbitration judgment and proceedings and entry of judgment on any award.  Polartec and Buyer agree that any process or notice of motion or other application to either Court or a Judge thereof and any notice in connection with arbitration or the institution of same may be served within or outside the State of New York by registered or certified mail or by personal service, provided a reasonable time for appearance is allowed.  The arbitrators sitting in any such controversy shall not have the authority or power to modify or alter any express condition or provision of this contract, or any modification thereof, or to render an award which by its terms has the effect of altering or modifying any express condition or provision of this contract or any modification thereof.  The arbitrators shall be required to determine the award in accordance with this contract including without limitation Article 21, and to issue a written decision setting forth the reason or reasons for the award. The arbitrator(s) are not empowered to award special, consequential, statutory, exemplary or punitive damages, to order specific performance or to issue injunctions.  No award may be made by the arbitrators which imposes liability contrary to the provisions of this contract or which is in excess of the specified measure of damages herein set forth limiting claims against Buyer and Polartec.  Any award in violation of the terms hereof shall be deemed a departure from the terms of submission and shall be wholly void and unenforceable.  The entry into this contract by Buyer and Polartec shall constitute an agreement to arbitrate disputes under this contract and every other contract between Buyer and Polartec and hereafter.  Any claim by Buyer of any kind, nature or description is barred and waived unless Buyer institutes arbitration proceedings within one year after the claimed breach occurs.  The failure to institute arbitration proceedings within this period shall constitute an absolute bar to the institution of arbitration or other proceedings by Buyer and a waiver of all claims on Buyer's part, unless both parties have agreed to an extension.

4.  ANTICIPATION:  No allowance shall be made to Buyer for anticipation.  Buyer shall pay interest on all overdue bills from date of maturity at the rate set forth on the respective invoice for the goods.

5.  CREDITS AND PAYMENTS:  (a) This contract is based upon a limit of credit  approved by Polartec in its sole judgment.  Polartec reserves the right to limit or cancel Buyer's credit line.  If Buyer exceeds its line of credit or if, in the opinion of Polartec, the financial condition of Buyer warrants such action, Polartec on written demand by Buyer, and notwithstanding the selling terms previously agreed to, shall require cash or anticipate payment before delivery of any shipments.  Upon failure by Buyer to make such payment within 10 days, Polartec shall have, in addition to the other rights set forth in this contract or granted to it by law, the right to cancel the contract or bill all or any part of the undelivered goods to Buyer and withhold delivery until payment is received, or sell all or any part of the undelivered goods at public or private sale holding Buyer responsible for any financial loss incurred.  Approval of credit for one or more deliveries or contracts shall not be deemed a waiver of the provisions of this paragraph.  (b) Invoices shall be paid by Buyer in the currency set forth on the respective invoice for the goods, regardless of controversies relating to other invoices or other delivered or undelivered goods. Payment shall not be considered to have been made until the amount due has been credited to the account of Polartec in immediately available funds.  Buyer shall not be entitled to suspend any payment obligation or to invoke any recoupment or set-off.  If Buyer fails to meet any of its payment obligations, all out-of-pocket costs and expenses reasonably incurred to obtain such payment shall be at Buyer's expense.  Such costs shall in any event include the costs of collection agencies, process servers, attorneys, and court costs.  (c) Checks or other remittances received from or for the account of Buyer may be applied against amounts owing by Buyer, without accord and satisfaction of Buyer's liability, regardless of writings, legends or notations on such check or remittance or of other writings, statements or documents.  (d) Upon breach by Buyer as to any installment, Polartec, at its option, may treat such breach as severable or as a breach of the entire contract, on giving notice of such election to Buyer.  (e) Any property of Buyer, including but not limited to goods billed and held (whether or not paid for) at any time in Polartec's possession (including the possession by any parent, subsidiary, or affiliated company or vendor of Polartec), either as principal or agent shall be deemed held as security for, and may at Polartec's option be set-off against any and all of Buyer's obligations to Polartec or any parent, subsidiary, affiliate, principal or agent of Polartec.  (f) All freight, insurance and other delivery charges shall be paid as a separate item by Buyer, and shall not be subject to discount.

6.  DELIVERY:  (a) Polartec reserves the right to make delivery of no greater than ten (10%) percent either over or under the specified quantity herein.  Any such delivery shall then take effect the five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim  (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality.  (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract.  (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay.  If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract.  (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations.  (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered.  (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver such notice shall constitute valid tender of delivery.  (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection.  (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec is not herewith in regard to sales to Buyer, at the rate of interest as set form on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days.  (j) Partial deliveries shall be accepted by Buyer and paid for at the contract price and terms.  All sample requirements furnished in connection with this contract shall be charged by Polartec and paid for by Buyer at the contract price.

7.  DELAY IN DELIVERY: (a) Any delivery or tender made within (15) days after the anticipated delivery date shall constitute a good delivery or tender.  Delay in delivery in excess thereof shall entitle Buyer to cancel only that portion of any order which is excessively delayed, provided, however, to invoke such cancellation, Buyer must give Polartec notice thereof in writing sent by certified mail, and such cancellation shall take effect five (5) days after receipt by Polartec of such notice from Buyer, provided Polartec has not shipped such goods in the interim  (b) Buyer agrees that delay in delivery or defect in quality shall entitle Buyer to cancel only that portion of any item, style or color and/or number which is delayed in delivery or defective in quality.  (c) Delay in delivery of sample pieces or other sample requirements shall not constitute a breach of this contract.  (d) If delivery under this contract is prevented or delayed by labor disturbances, accidents, fire, war, government regulation, embargoes, lack of shipping facilities or any case or circumstance of whatever kind or nature (whether like or unlike the foregoing), beyond Polartec's control, Polartec's time for performance shall be extended by the period of such delay.  If the period during which performance is not reasonably possible exceeds or will exceed three (3) months, and if Buyer has not previously canceled such Contract, then either party shall be entitled to cancel such Contract.  (e) Performance under this contract shall be modified to the extent made necessary by compliance of Polartec, or any source of supply of Polartec with government laws, rules or regulations.  (f) If embargo or lack of shipping facilities prevents or delays delivery of any goods ready for shipment, Polartec may immediately bill the goods at which time title or, as applicable, risk of loss, shall pass to Buyer and Polartec shall hold the goods for the account of Buyer, who shall pay the invoices rendered.  (g) Where Buyer has declared or manifested an intention not to accept delivery of goods, no tender or actual shipment by Polartec shall be necessary and Polartec may at its option give written notice to Buyer that Polartec is ready and willing to deliver such notice shall constitute valid tender of delivery.  (h) Where Buyer, prior to due date, has declared or manifested an intention not to pay when payment for same falls due, for any or all of the goods sold, then notwithstanding the time for payment of the goods sold has not yet arrived because of dating, Polartec may, at its option forthwith take such action as is herein provided by way of its remedies for breach of this contract by Buyer, including institution of arbitration proceedings to effect collection.  (i) If the goods are in a deliverable state or are in the process of manufacture, Polartec may at its sole discretion defer delivery or defer any installment delivery at the request of Buyer, but any such deferment shall bear interest at the prevailing rate charged by Polartec's factor or if Polartec is not herewith in regard to sales to Buyer, at the rate of interest as set form on the respective invoice for the goods and in no event shall any deferment of delivery or deferment of any installment delivered exceed a period of thirty (30) days.

8.  CLAIMS AND ALLOWANCES:  (a) Polartec will not be liable for normal manufacturing defects nor for customary variations from quantities, color or other specification, nor for defects or irregularities beyond control of Polartec, or natural to, or inherent in, any particular fiber, yarn, fabric or construction or process, or the dyeing or printing thereof; nor for obvious or non-obvious defects inherent in any particular type of printing and/or dyeing or processing, including any durable press processing, bonding and laminating, nor for color fastness.  Buyer must notify Polartec of any claim that the quality of the goods delivered is not in accordance with the contract, and at the discretion of Polartec, the goods must either be made available for inspection by Polartec or promptly and properly returned to Polartec at Buyer's expense, in the same condition as when delivered to Buyer or its agent.  If Buyer or its agent fails to make such return to Polartec or to afford full opportunity for examination, Buyer shall not be entitled to any reduction, allowance or claim with respect to such goods.  Polartec may within thirty (30) days after receipt of written notice by certified mail from Buyer of claim for defective goods, examine and replace any goods which are found to be not in accordance with the contract, and in such event, no claim may be made by Buyer.  Buyer may cancel only that portion of the order pertaining to goods found to be defective in quality and not replaced by Polartec.  (b) Claims of any kind or nature, except for non-obvious defects which are not visible or detectable upon reasonable examination are specifically barred, unless made in writing within ten (10) days after the date of invoice.  Claims for non-obvious defects are barred unless made in writing within thirty (30) days after the date of invoice.  Notwithstanding the foregoing, all claims whether for obvious or non-obvious defects are specifically barred for goods after they have been cut or processed or changed from the original state, and sponging, laminating, bonding, processing, printing or in any manner changing the form of the goods by Buyer or its agent, constitutes complete acceptance of such goods and an absolute waiver of any claim for defects.  All of the provisions of this section apply with equal force and effect to goods invoiced to Buyer by Polartec and held by Polartec awaiting Buyer's shipping instructions.  Such goods held on such "bill and hold" basis may be examined by Buyer at their location in Polartec's plant upon reasonable notice to Polartec and Polartec agrees to permit Buyer and/or its agent, access to its plant for the purpose of examining such goods.  Postponement of shipment at Buyer's request and/or failure by Buyer to inspect, shall in no way or extend the time for making claims, whether based upon obvious or non-obvious defects.  Even if Buyer complains in a timely fashion, it shall remain obliged to pay for and take receipt of all orders placed.  Buyer is not allowed to suspend any of its obligations towards Polartec.

9.  WARRANTIES:  (a) POLARTEC MAKES NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION OF THE GOODS ON THE ORDER ACKNOWLEDGMENT ISSUED BY POLARTEC, AND POLARTEC MAKES NO WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE OR END USE OR OF NON-INFRINGEMENT OF THIRD-PARTY'S CLAIMS.  Buyer undertakes the complete and entire responsibility of making tests and ascertaining whether the goods purchased hereunder meet the requirements of, or are suitable for Buyer's intended use.  (b) If the sale of goods shown on the Order Acknowledgment is by sample, delivery of goods of a quality substantially equal to such sample or superior thereto shall be a full compliance with this contract.  (c) Exact matches of colors are not guaranteed by Polartec, but goods delivered shall be a reasonable match to standard.  Goods may vary in shade from piece to piece and Polartec assumes no responsibility for such variations.  Shade classifications and segregation are for convenience of Buyer only, and even though goods may be segregated as to shade from goods unit to packing unit or within any packing unit, Polartec assumes no responsibility for the accuracy of such segregation.  (d) Unless specifically stated on the Order Acknowledgment, no warranty is made as to any factors of quality including but not limited to shade, fastness of color (including fading, cracking and bleeding, washability and dry cleanability) breaking strength, permanence of finish, shrinkage or residual shrinkage, slippage, yield, weight, resistance to abrasion, and frosting.  (e) Any goods which are processed in one section wholly or in part of synthetic or natural yarn is sold subject to imperfections in such yarn over which Polartec has no control.

10.  ASSORTMENTS:  Buyer must specify assortment with order or within time required in this contract, or where no time is specified, within five (5) days from written request therefor.  Assortments shall be made against Polartec's current lines in colors and/or styles available at the time of assortment.  If Buyer fails to furnish assortment within time specified, Polartec may, at its option, may (a) supply and invoice its own assortment or (b) segregate the greige goods for the account of Buyer (which shall constitute full performance by Polartec under this contract) and immediately invoice such greige goods at the finished goods price.  If Buyer subsequently specifies assortment, Polartec, to the extent that facilities are available to it, will finish the goods from available colors only, at no extra cost to Buyer, provided that any increased costs incurred in finishing goods resulting from Buyer's delay shall be paid by Buyer; or  (c) treat the contract as breached and claim damages for breach thereof.  If Polartec permits Buyer to complete assortment after time specified, delivery date shall be extended for such period of time as Polartec requires to complete performance.

11.  RISK:  Goods invoiced and held at any location for whatever reason shall be at Buyer's sole risk and account.  Goods held over thirty (30) days are subject to storage and other charges.

12.  PATTERN AND CONFINEMENT:  (a) No rights in patterns or designs of goods covered by this contract pass to Buyer, except as an integral part of the goods and Buyer, for valuable consideration received, as a special inducement to Polartec, agrees not to copy, reproduce, imitate or substantially adapt or cause to be copied, reproduced, imitated or substantially adapted, either directly or indirectly, or purchase from anyone else or use in Buyer's operations, any such patterns or designs.  (b) No goods or patterns are confined to Buyer nor are goods confined to Buyer for a particular price category, unless specifically shown on the Order Acknowledgment.  Such confinements, if given, shall not be exclusive but shall be limited to the specified field of Buyer, and shall expire thirty (30) days after date of invoice of the goods so confined.  Polartec shall be responsible only for reasonable care in confining such pattern to the specified purpose and term.  Reorders do not extend terms of confinement.

13.  NOTICES and TRADE NAMES:  Buyer shall be obligated to use notices or labeling as may be required by Polartec.  Buyer shall likewise cause third parties, purchasing from Buyer for use or further distribution, to use such notices or labeling. Polartec may require.  Buyer shall not itself be permitted, and shall not cause or permit any of such third parties, to remove or change any proprietary notices or labeling of Polartec attached to goods.  No right to the use of any trade name or any trademark of Polartec passes to Buyer under this contract and Buyer agrees to refrain either directly or indirectly from using any of Polartec' trade-names or trademarks unless specifically authorized by Polartec in writing.

14.  INCREASE IN COSTS:  Prices for any undelivered goods may be increased by Polartec to reflect any currency fluctuations applicable thereto, or any increase in the cost to Polartec of supplies, labor, services, or fuel costs, or any increase in Polartec's cost resulting from increases in import duties, excise taxes, valued added taxes or other governmental or administrative action, or any other cause beyond Polartec's control.  The amount of such increase as computed by Polartec shall be binding upon Buyer except for clerical or mathematical error.  Polartec may modify deliveries to the extent necessitated by any governmental action.

15.  SECURITY INTEREST:  Polartec shall retain title to all goods until Polartec has received payment in full of the purchase price of such goods delivered or to be delivered to Buyer.  Buyer shall inform Polartec of all storage locations for goods in which Polartec has reserved title. Buyer shall execute and deliver to Polartec, for recording in any appropriate Uniform Commercial Code recording offices, such financing statements and amendments thereto under the Uniform Commercial Code as Polartec may reasonably request to protect and perfect Polartec' reservation of title in goods.  Buyer hereby appoints Polartec an officer or agent of Polartec, as Buyer's attorney, with full power of substitution, to execute in Buyer's name such financing statements and amendments as may require Buyer's signature.  Buyer acknowledges that (a) a photocopy of this contract may be filed as a financing statement in any appropriate Uniform Commercial Code recording office and (b) Polartec shall be entitled to provide notification of Polartec's reservation of title to any person purporting to claim a security interest in Buyer's inventory or which has otherwise filed financing statements against Buyer covering Buyer's inventory.  Buyer shall insure such goods, for which payment in full has not been made, against any and all risks commonly insured against such theft, fire and/or water damage, shall name Polartec as additional insured and loss payee on all such insurances and shall provide evidence thereof to Polartec upon its request.

16.  REMEDIES:  Upon Buyer's failure to pay for any goods as and when due, Polartec shall have the rights and remedies of a secured party under applicable law.  Polartec shall be entitled to enter upon any land and/or buildings in which goods may be, or are reasonably believed by Polartec to be, situated.  In the event that goods are stored or processed by a third party, Buyer shall cause such third party to cooperate with any repossession of goods by Polartec.  In repossessing, storing and disposing of goods shall be paid by Buyer, and Buyer's obligations therefor shall be secured by all goods to which Polartec has reserved title. If Buyer is in default under, or breaches or repudiates this or any other contract with Polartec, or fails to pay when due any invoice under said contracts then, in addition to any and all other remedies which Polartec may have hereunder or by law, Polartec without notice: (a) may bill and declare forthwith due and payable all charges for undelivered goods under this or any other contract with Polartec, (b) may defer shipment hereunder or under any other contract until such default, breach or repudiation is removed; (c) may cancel any undelivered portion of this and/or any other contract in whole or in part (Buyer remaining liable for damages); (d) may declare forthwith due and payable all outstanding bills of Buyer under this or any other contract; (e) may at any time and from time to time (irrespective of (i) whether title or risk of loss may have passed to Buyer or (ii) any terms of credit) sell all or any part of the goods for the account of Buyer at public or private sale, Buyer to be responsible for the costs and expenses of such sale and for any difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser at such goods at any such sale); or (f) Polartec may take possession of any goods in which Polartec has reserved title, in which case Buyer shall be liable as the foregoing provisions provide as to the unpaid balance after application of any proceeds of resale.  In the event that goods are repossessed by Polartec but are not resold, Buyer shall be liable for the difference between the contract price and the amount received on such sale, Polartec accounting to Buyer for any excess.  The foregoing rights and remedies are cumulative and in addition to any other rights and remedies which Polartec may have.  Should any goods be repossessed by Polartec and not resold, and Buyer to whom such goods are furnished are returned or restocked to avoid such cost and/or to avoid delay or the amount received on such sale, Polartec accounting to Buyer for any excess (Polartec having the right to become the purchaser at such goods at any such sale); or (f) Polartec may take possession of any goods in which Polartec has reserved title, failed or refused to receive, with the right to hold or sell same as above provided.

17.  POLARTEC'S LIABILITY:  The limit of liability of Polartec for any defective or non-conforming goods shall be the difference in value, on the contract date of delivery, between the goods specified and the goods actually delivered. The limit of liability for late delivery or non-delivery or any other breach including breach of agreement to confine, if any, shall be the difference, if any between the contract price and the fair market value of goods delivered or to be delivered on the contract date of delivery.  Buyer shall not be entitled to damages for late delivery or non-delivery unless it actually purchases the same goods elsewhere at a higher price.  IN NO EVENT SHALL BUYER BE ENTITLED TO CLAIM AGAINST OR RECEIVE FROM POLARTEC, AND POLARTEC SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE, SPECIAL DAMAGES, PROMOTIONAL OR MANUFACTURING EXPENSES, INJURY TO REPUTATION, LOSS OF PROFITS ON CONTEMPLATED USE, PROFIT OF ANY DESCRIPTION OR LOSS OF BUYER.

18.  SEVERABILITY:  If any provision of this contract is or becomes, at any time and under any law, rule or regulation, unenforceable or invalid, no other provision of this contract shall be affected thereby, and the remaining provisions of this contract shall continue with the same effect as if such unenforceable or invalid provision shall not have been inserted in this contract.

19.  HEADINGS:  The headings in this contract are for reference only and shall in no part   otherwise affect the meaning hereof.

20.  ASSIGNMENT:  No right of Buyer hereunder or arising out of this contract may be assigned by Buyer without the express written consent of Polartec.

21.  VALIDITY:  The validity of this contract shall be determined under the internal laws of the State of New York.

22.  CISG:  The Convention on the International Sale of Goods shall not apply to this contract and all of the provisions of the CISG are specifically excluded.

| ACCEPTED | POLARTEC, LLC | ACCEPTED | |
| --- | --- | --- | --- |
| (SELLER) | | (BUYER) | |
| BY | | BY | DATE |

Polartec_000051

# POLARTEC®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## PACKING LIST

**CARRIER**

Shanghai Lucky Load int log Co

**SOLD TO**
Junny Int/Extreme Sports Divas
Lauren Park
#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

**SHIP TO**
Dong Tam Garment Company Ltd.
Luong Hoang Nam
No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Customer# 17255      Load# 309600

**CUSTOMER PO** DIVAS2016BULK    **ORDER** 534282    **LN** 2

ITEM  **66000X99J14A**      **LAMN NYL WOV/NYL TRICOT**
ASPHALT GREY/LIGHT GREY

| Container | Shop Order | Net Qty | Gross Wgt | Net Wgt | Width | Std Diam | Std Vol |
|---|---|---|---|---|---|---|---|
| BA10013210 | 403659 | 58.825 YD | 26.940 lb | 25.442 lb | 55 in | 10 in | 3.4 ft3 |
|  |  | 53.789 M | 12.220 kg | 11.540 kg | 140 cm | 26 cm | .1 m3 |
| BA10013211 | 403659 | 84.230 YD | 37.743 lb | 36.245 lb | 55 in | 12 in | 4.9 ft3 |
|  |  | 77.019 M | 17.120 kg | 16.440 kg | 140 cm | 31 cm | .1 m3 |
| BA10013212 | 403659 | 86.745 YD | 39.506 lb | 38.008 lb | 55 in | 13 in | 5.0 ft3 |
|  |  | 79.319 M | 17.920 kg | 17.240 kg | 140 cm | 32 cm | .1 m3 |
| BA10013213 | 403659 | 109.362 YD | 48.744 lb | 47.246 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 100.000 M | 22.110 kg | 21.430 kg | 140 cm | 36 cm | .2 m3 |
| BA10013214 | 403659 | 38.506 YD | 18.099 lb | 16.601 lb | 55 in | 8 in | 2.2 ft3 |
|  |  | 35.210 M | 8.210 kg | 7.530 kg | 140 cm | 21 cm | .1 m3 |
| BA10013215 | 403659 | 108.126 YD | 47.972 lb | 46.474 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 98.870 M | 21.760 kg | 21.080 kg | 140 cm | 36 cm | .2 m3 |
| BA10013216 | 403659 | 84.514 YD | 37.809 lb | 36.311 lb | 55 in | 12 in | 4.9 ft3 |
|  |  | 77.279 M | 17.150 kg | 16.470 kg | 140 cm | 31 cm | .1 m3 |
| BA10013217 | 403659 | 109.329 YD | 48.700 lb | 47.202 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 99.970 M | 22.090 kg | 21.410 kg | 140 cm | 36 cm | .2 m3 |
| BA10013218 | 403659 | 83.355 YD | 37.698 lb | 36.200 lb | 55 in | 12 in | 4.8 ft3 |
|  |  | 76.219 M | 17.099 kg | 16.420 kg | 140 cm | 31 cm | .1 m3 |
| BA10013219 | 403659 | 106.704 YD | 47.796 lb | 46.298 lb | 55 in | 14 in | 6.2 ft3 |
|  |  | 97.570 M | 21.680 kg | 21.000 kg | 140 cm | 35 cm | .2 m3 |
| BA10013220 | 403659 | 41.306 YD | 19.180 lb | 17.682 lb | 55 in | 9 in | 2.4 ft3 |
|  |  | 37.770 M | 8.700 kg | 8.020 kg | 140 cm | 22 cm | .1 m3 |
| BA10013221 | 403659 | 87.413 YD | 39.109 lb | 37.611 lb | 55 in | 13 in | 5.1 ft3 |
|  |  | 79.930 M | 17.739 kg | 17.060 kg | 140 cm | 32 cm | .1 m3 |
| BA10013222 | 403659 | 42.858 YD | 19.621 lb | 18.123 lb | 55 in | 9 in | 2.5 ft3 |
|  |  | 39.189 M | 8.900 kg | 8.220 kg | 140 cm | 22 cm | .1 m3 |
| BA10013223 | 403659 | 94.138 YD | 41.027 lb | 39.529 lb | 55 in | 13 in | 5.5 ft3 |
|  |  | 86.079 M | 18.609 kg | 17.930 kg | 140 cm | 33 cm | .2 m3 |
| SUBTOTAL |  | 1,135.411 YD | 509.944 lb | 488.972 lb |  |  | 65.8 ft3 |
| 14 Rolls |  | 1,038.213 M | 231.307 kg | 221.790 kg |  |  | 1.9 m3 |

# POLARTEC®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

# PACKING LIST

**CARRIER**

Shanghai Lucky Load int log Co

**SOLD TO**
Junny Int/Extreme Sports Divas
Lauren Park
#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

**SHIP TO**
Dong Tam Garment Company Ltd.
Luong Hoang Nam
No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Customer# 17255                    Load# 309600

**CUSTOMER PO** DIVAS2016BULK    **ORDER** 534282    **LN** 3

ITEM **66000X29M76A**                    **LAMN NYL WOV/NYL TRICOT**
                                         BLUE #3/LT GREY

| Container | Shop Order | Net Qty | Gross Wgt | Net Wgt | Width | Std Diam | Std Vol |
|---|---|---|---|---|---|---|---|
| BA10013180 | 403657 | 100.197 YD | 44.224 lb | 42.726 lb | 55 in | 13 in | 5.8 ft3 |
|  |  | 91.620 M | 20.060 kg | 19.380 kg | 140 cm | 34 cm | .2 m3 |
| BA10013181 | 403657 | 22.944 YD | 11.397 lb | 9.899 lb | 55 in | 6 in | 1.3 ft3 |
|  |  | 20.980 M | 5.170 kg | 4.490 kg | 140 cm | 16 cm | .0 m3 |
| BA10013182 | 403657 | 83.279 YD | 36.971 lb | 35.473 lb | 55 in | 12 in | 4.8 ft3 |
|  |  | 76.150 M | 16.770 kg | 16.090 kg | 140 cm | 31 cm | .1 m3 |
| BA10013183 | 403657 | 108.968 YD | 47.487 lb | 45.989 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 99.640 M | 21.540 kg | 20.860 kg | 140 cm | 36 cm | .2 m3 |
| BA10013184 | 403657 | 69.576 YD | 30.732 lb | 29.234 lb | 55 in | 11 in | 4.0 ft3 |
|  |  | 63.620 M | 13.940 kg | 13.260 kg | 140 cm | 29 cm | .1 m3 |
| BA10013185 | 403657 | 44.947 YD | 20.304 lb | 18.806 lb | 55 in | 9 in | 2.6 ft3 |
|  |  | 41.099 M | 9.210 kg | 8.530 kg | 140 cm | 23 cm | .1 m3 |
| BA10013186 | 403657 | 109.066 YD | 47.818 lb | 46.320 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 99.729 M | 21.690 kg | 21.010 kg | 140 cm | 36 cm | .2 m3 |
| BA10013187 | 403657 | 108.049 YD | 47.156 lb | 45.658 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 98.799 M | 21.389 kg | 20.710 kg | 140 cm | 36 cm | .2 m3 |
| BA10013188 | 403657 | 109.318 YD | 47.884 lb | 46.386 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 99.960 M | 21.720 kg | 21.040 kg | 140 cm | 36 cm | .2 m3 |
| BA10013189 | 403657 | 108.301 YD | 47.311 lb | 45.813 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 99.030 M | 21.460 kg | 20.780 kg | 140 cm | 36 cm | .2 m3 |
| BA10013190 | 403657 | 51.454 YD | 23.060 lb | 21.562 lb | 55 in | 10 in | 3.0 ft3 |
|  |  | 47.049 M | 10.460 kg | 9.780 kg | 140 cm | 25 cm | .1 m3 |
| BA10013191 | 403657 | 108.049 YD | 47.134 lb | 45.636 lb | 55 in | 14 in | 6.3 ft3 |
|  |  | 98.799 M | 21.380 kg | 20.700 kg | 140 cm | 36 cm | .2 m3 |
| BA10013192 | 403657 | 66.251 YD | 29.497 lb | 27.999 lb | 55 in | 11 in | 3.8 ft3 |
|  |  | 60.580 M | 13.380 kg | 12.700 kg | 140 cm | 28 cm | .1 m3 |
| SUBTOTAL |  | 1,090.399 YD | 480.975 lb | 461.501 lb |  |  | 63.1 ft3 |
| 13 Rolls |  | 997.055 M | 218.169 kg | 209.330 kg |  |  | 1.8 m3 |

# ▲ POLARTEC®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## PACKING LIST

### CARRIER

Shanghai Lucky Load int log Co

**SOLD TO**
Junny Int/Extreme Sports Divas
Lauren Park
#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

**SHIP TO**
Dong Tam Garment Company Ltd.
Luong Hoang Nam
No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Customer# 17255                           Load# 309600

**CUSTOMER PO** DIVAS2016BULK   **ORDER** 534282   **LN**   4

ITEM  **66000X49L42A**                **LAMN NYL WOV/NYL TRICOT**
                                        PINK #2/LT GREY

| Container | Shop Order | Net Qty | Gross Wgt | Net Wgt | Width | Std Diam | Std Vol |
|---|---|---|---|---|---|---|---|
| BA10013194 | 403658 | 96.686 YD | 42.659 lb | 41.161 lb | 55 in | 13 in | 5.6 ft3 |
| | | 88.409 M | 19.350 kg | 18.670 kg | 140 cm | 34 cm | .2 m3 |
| BA10013195 | 403658 | 109.219 YD | 47.465 lb | 45.967 lb | 55 in | 14 in | 6.3 ft3 |
| | | 99.869 M | 21.530 kg | 20.850 kg | 140 cm | 36 cm | .2 m3 |
| BA10013196 | 403658 | 54.352 YD | 24.338 lb | 22.840 lb | 55 in | 10 in | 3.2 ft3 |
| | | 49.699 M | 11.039 kg | 10.360 kg | 140 cm | 25 cm | .1 m3 |
| BA10013197 | 403658 | 59.142 YD | 26.146 lb | 24.648 lb | 55 in | 10 in | 3.4 ft3 |
| | | 54.079 M | 11.860 kg | 11.180 kg | 140 cm | 26 cm | .1 m3 |
| BA10013198 | 403658 | 92.159 YD | 40.079 lb | 38.581 lb | 55 in | 13 in | 5.3 ft3 |
| | | 84.270 M | 18.179 kg | 17.500 kg | 140 cm | 33 cm | .2 m3 |
| BA10013199 | 403658 | 108.902 YD | 46.826 lb | 45.328 lb | 55 in | 14 in | 6.3 ft3 |
| | | 99.579 M | 21.240 kg | 20.560 kg | 140 cm | 36 cm | .2 m3 |
| BA10013200 | 403658 | 82.316 YD | 36.199 lb | 34.701 lb | 55 in | 12 in | 4.8 ft3 |
| | | 75.269 M | 16.420 kg | 15.740 kg | 140 cm | 31 cm | .1 m3 |
| BA10013201 | 403658 | 108.191 YD | 47.752 lb | 46.254 lb | 55 in | 14 in | 6.3 ft3 |
| | | 98.929 M | 21.660 kg | 20.980 kg | 140 cm | 36 cm | .2 m3 |
| BA10013202 | 403658 | 86.144 YD | 38.139 lb | 36.641 lb | 55 in | 13 in | 5.0 ft3 |
| | | 78.770 M | 17.299 kg | 16.620 kg | 140 cm | 32 cm | .1 m3 |
| BA10013203 | 403658 | 39.282 YD | 18.210 lb | 16.712 lb | 55 in | 8 in | 2.3 ft3 |
| | | 35.919 M | 8.260 kg | 7.580 kg | 140 cm | 21 cm | .1 m3 |
| BA10013204 | 403658 | 109.044 YD | 47.729 lb | 46.231 lb | 55 in | 14 in | 6.3 ft3 |
| | | 99.709 M | 21.649 kg | 20.970 kg | 140 cm | 36 cm | .2 m3 |
| BA10013206 | 403658 | 108.191 YD | 47.465 lb | 45.967 lb | 55 in | 14 in | 6.3 ft3 |
| | | 98.769 M | 21.530 kg | 20.850 kg | 140 cm | 36 cm | .2 m3 |
| BA10013207 | 403658 | 71.533 YD | 32.341 lb | 30.843 lb | 55 in | 11 in | 4.1 ft3 |
| | | 65.409 M | 14.670 kg | 13.990 kg | 140 cm | 29 cm | .1 m3 |
| BA10013208 | 403658 | 71.774 YD | 31.812 lb | 30.314 lb | 55 in | 11 in | 4.2 ft3 |
| | | 65.630 M | 14.430 kg | 13.750 kg | 140 cm | 29 cm | .1 m3 |
| SUBTOTAL | | 1,196.760 YD | 527.160 lb | 506.188 lb | | | 69.4 ft3 |
| 14 Rolls | | 1,094.311 M | 239.116 kg | 229.600 kg | | | 2.0 m3 |

**PACK LIST TOTAL**

# POLARTEC®

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

## PACKING LIST

CARRIER

Shanghai Lucky Load int log Co

**SOLD TO**
Junny Int/Extreme Sports Divas
Lauren Park
#814 Indeokwon Sung jee 954-6
Gwanyang Dongan-su 431-060
Gyeonggi-do
KOREA, REPUBLIC OF

**SHIP TO**
Dong Tam Garment Company Ltd.
Luong Hoang Nam
No 26A, Chuong Duong St. Tran
Phu Urban Hai Duong City
Hai Huong Province
VIETNAM

Customer# 17255                    Load# 309600

---

**PACK LIST TOTAL**

| 41 Rolls | 3,422.570 YD | 1,518.079 lb | 1,456.661 lb | 198.3 ft3 |
|---|---|---|---|---|
|  | 3,129.579 M | 688.592 kg | 660.720 kg | 5.6 m3 |

| Harmonization Code | Description |  |  | Net WT(lbs) | Net WT(kg) |
|---|---|---|---|---|---|
| 5407420000 | WOVEN FACE |  |  | 1,456.661 | 660.720 |

**Summary By Shop Order(s)**

| Shop Order | Quantity | Gross Weight | Net Weight | Number of Pieces |
|---|---|---|---|---|
| **Item  66000X29M76A** |  | **LAMN NYL WOV/NYL TRICOT** |  |  |
|  |  | BLUE #3/LT GREY |  |  |
| 403657 | 1,090.399 YD | 480.975 lb | 461.501 lb | 13 Rolls |
|  | 997.055 M | 218.169 kg | 209.330 kg |  |
| **Item  66000X49L42A** |  | **LAMN NYL WOV/NYL TRICOT** |  |  |
|  |  | PINK #2/LT GREY |  |  |
| 403658 | 1,196.760 YD | 527.160 lb | 506.188 lb | 14 Rolls |
|  | 1,094.311 M | 239.116 kg | 229.600 kg |  |
| **Item  66000X99J14A** |  | **LAMN NYL WOV/NYL TRICOT** |  |  |
|  |  | ASPHALT GREY/LIGHT GREY |  |  |
| 403659 | 1,135.411 YD | 509.944 lb | 488.972 lb | 14 Rolls |
|  | 1,038.213 M | 231.307 kg | 221.790 kg |  |

Polartec_000084

 **POLARTEC®**

46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

```
REMIT TO:  PNC Bank, N.A.
POLARTEC, LLC
Account No. 8026569699
Swift Code: PNCCUS33.
           USA
```

| SOLD TO | | SHIP TO | |
|---|---|---|---|
| Junny Interwork Corp. | | Dong Tam Garment Company Ltd. | |
| Lauren Park | | Luong Hoang Nam | |
| #814 Indeokwon Sung jee 954-6 | | No 26A, Chuong Duong St. Tran | |
| Gwanyang Dongan-su 431-060 | | Phu Urban Hai Duong City | |
| Gyeonggi-do | | Hai Huong Province | |

PXM     KOREA, REPUBLIC OF                          VIETNAM                        HK

| ORDERING CUSTOMER | PAYMENT TERMS | | VAT ID |
|---|---|---|---|
| 17255 Junny Int/Extreme Sports Divas | CBD | | |

| SHIP VIA | SHIPMENT TERMS | LOAD NUMBER |
|---|---|---|
| Shanghai Lucky Load int log Co | Free on Board | 309600 |

| CUSTOMER NO. | SALESPERSON | CUSTOMER PURCHASE ORDER NO. | BILL OF LADING | ORDER NO. |
|---|---|---|---|---|
| 17254 | House Account | DIVAS2016BULK | 000000000614983 | 534282 |

| ITEM | DESCRIPTION | QUANTITY | UM | PRICE | AMOUNT | CUR |
|---|---|---|---|---|---|---|
| 66000X99J14A | **LAMN NYL WOV/NYL TRICOT** | 1038.213<br>1135.411 | M<br>YD | 19.5000 | 20,245.15 | USD |
| | ASPHALT GREY/LIGHT GREY<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>5407.42.0000  WOVEN FACE<br>Country of Origin:  CHINA | | | | | |
| 66000X29M76A | **LAMN NYL WOV/NYL TRICOT** | 997.055<br>1090.399 | M<br>YD | 19.5000 | 19,442.57 | USD |
| | BLUE #3/LT GREY<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>5407.42.0000  WOVEN FACE<br>Country of Origin:  CHINA | | | | | |
| 66000X49L42A | **LAMN NYL WOV/NYL TRICOT** | 1094.311<br>1196.760 | M<br>YD | 19.5000 | 21,339.06 | USD |
| | PINK #2/LT GREY<br>100% NYLON<br>COMPOSED OF THE FOLLOWING COMPONENTS:<br>FACE: 100% NYLON<br>BACK: 100% NYLON<br>5407.42.0000  WOVEN FACE<br>Country of Origin:  CHINA | | | | | |
| | SUB TOTAL: | | | | **61,026.78** | USD |

**POLARTEC®**

ALL CLAIMS TO BE REPORTED WITHIN TEN DAYS AFTER RECEIPT OF GOODS.   NO ALLOWANCES MADE AFTER GOODS ARE CUT.
GOODS DELIVERED TO COMMON CARRIERS OR SENT VIA COURIER ARE AT THE RISK OF THE PURCHASER.

Polartec_000032



46 Stafford Street Lawrence, MA 01842-1609 – U.S.A. – Tel(978) 685-6341 FAX(978) 659-5316

REMIT TO:  PNC Bank, N.A.
POLARTEC, LLC
Account No. 8026569699
Swift Code: PNCCUS33.
          USA

| SOLD TO | SHIP TO |
|---|---|
| Junny Interwork Corp.<br>Lauren Park<br>#814 Indeokwon Sung jee 954-6<br>Gwanyang Dongan-su 431-060<br>Gyeonggi-do | Dong Tam Garment Company Ltd.<br>Luong Hoang Nam<br>No 26A, Chuong Duong St. Tran<br>Phu Urban Hai Duong City<br>Hai Huong Province |

PXM     KOREA, REPUBLIC OF                              VIETNAM                                      HK

| ORDERING CUSTOMER | PAYMENT TERMS | VAT ID |
|---|---|---|
| 17255 Junny Int/Extreme Sports Divas | CBD | |

| SHIP VIA | SHIPMENT TERMS | LOAD NUMBER |
|---|---|---|
| Shanghai Lucky Load int log Co | Free on Board | 309600 |

| CUSTOMER NO. | SALESPERSON | CUSTOMER PURCHASE ORDER NO. | BILL OF LADING | ORDER NO. |
|---|---|---|---|---|
| 17254 | House Account | DIVAS2016BULK | 000000000614983 | 534282 |

| ITEM | DESCRIPTION | QUANTITY | UM | PRICE | AMOUNT | CUR |
|---|---|---|---|---|---|---|
| | **TOTAL AMOUNT DUE:** | | | | **61,026.78** | USD |
| | | | | | | |
| | TOTAL QTY: | 3129.579 | M | | | |
| | TOTAL QTY: | 3422.570 | YD | | | |
| | TOTAL WEIGHT: | 1518.079 | LB | 688.592 | KG | |
| | | | | | | |
| | Finished Goods Roll | 41 | | | | |

This invoice is subject to a late payment charge of 1.5% per month if
                    not paid by its due date

        * * *   END OF INVOICE * * *

ALL CLAIMS TO BE REPORTED WITHIN TEN DAYS AFTER RECEIPT OF GOODS.  NO ALLOWANCES MADE AFTER GOODS ARE CUT.
GOODS DELIVERED TO COMMON CARRIERS OR SENT VIA COURIER ARE AT THE RISK OF THE PURCHASER.